May it please the court, my name is Ellis Boyle. I represent the appellant Joe Callahan, the administrator of the estate for Sergeant Megan Callahan. Plaintiff's appellant respectfully requests that the court reverse the district court's order dismissing plaintiff's complaint against the defendants and allow this case to proceed to discovery. We're here because plaintiff alleged that defendants violated Sergeant Callahan's constitutional rights under the due process clause of the Constitution by a state created danger claim. But the district court dismissed the complaint without allowing the parties to proceed into discovery and explore the facts and evidence. Essentially the district court error by holding that plaintiff one, failed to make specific allegations against defendants and two, failed to allege defendants had intent to harm. Significantly the underlying opinion by the district court did not address qualified immunity at all so that issue was not on appeal. The court should review this denial of a motion to dismiss de novo. Taking the first issue about the specific allegations, district court erred because plaintiff provided enough detail with the information available to time of filing. The information that plaintiff had available to him before the filing of this case was gathered from DPS in a completely separate state court lawsuit brought against a completely different defendant, the murderer, inmate Wissing. Plaintiff, who was also the plaintiff in that direct state case against the inmate Wissing, sent a subpoena to DPS to provide information about inmate Wissing, Bertie Correctional Institute, the attack on Sergeant Callahan, and issues related to understaffing at Bertie Correctional and other prisons in North Carolina. DPS in that underlying secondary case filed a motion to avoid providing information but the state court compelled DPS to provide information under a protective order. This information... Is this state court proceeding a part of the record? No, your honor, it is not. I'm just trying to lay the foundation for why... I suggest let's go to the record in the in the issues. I'm not sure things that are outside of the record are much of our concern. Your honor, when you look at the complaint that was filed in this case, you'll see that most of it was alleged upon information and belief due to, and that's where I was going with that, your honor, the protective order and the underlying state court case and the lack of ability to sort of publicly detail information. But the plaintiff has information that prison officials that are the defendants here had transcribed recordings of inmate Wissing's in weeks leading up to his murder of Sgt. Callaghan, in which he made overt threats against many people to include Sgt. Callaghan. So, counsel, if I could, this is Judge Quattlebaum, if I could kind of, you know, direct you to a couple issues I'm concerned of. As I understand and read the district court's order, they really dismissal on, you know, kind of three different basis. One looks like he, you know, is based on the fact that you kind of lump all the defendants together without segregating, you know, who does what. And, yeah, and I kind of, you know, think you have a point there that it may be hard to break that down prior to discovery. But the two others are you fail to allege affirmative acts, and we'll come back to that one because that's gotten a lot of attention. But the last one is that you have not alleged intent to harm. You know, just on that basis alone, why, I mean, I mean, that does seem to be required under the law, at least in an employer situation. Why doesn't that enough in and of itself to affirm the district court? Thank you, Your Honor. The reason is because the Supreme Court in the Lewis, which is 523 U.S. 833, and also in the Collins case, Your Honor, has stated that the level of harm or proof that you have to provide to make a state-created danger claim is something that shocks the conscience. Now, I believe in the Lewis case, Your Honor, the Supreme Court said if you're able to allege and prove as a plaintiff that the state actor actually intended to harm or to cause harm to the employee, it would certainly satisfy that conscious shocking behavior. But there's a spectrum, and it's very clear, and I don't disagree, that what you have to allege is more than negligence, and that's true. It has to be something that is in the spectrum above negligence all the way up to... I'm sorry, maybe I'm not following you here. So, we have two cases called Waybright and Slaughter, and those are two, four, three cases that say in the employee context that the point on the Lewis spectrum that you must meet is intent to harm. And so, I guess it sounds like to me what you're saying is we should overturn those two cases. No, Your Honor. I actually believe that if you look at the Waybright case, it says that there is... Again, it affirms that holding from the Lewis Supreme Court case that if you are able to state intent to harm, you certainly can achieve the level of conscious shocking behavior. But it also says that plaintiff's only option in Waybright was to argue against the presumption to the contrary that this case presents one of those special circumstances in which culpability in the middle range, again on the spectrum, here deliberate indifference should shock the conscious to such an extent that a federal action lies. So, it's less than alleging the intent to harm. Okay, but Mr. Boyle, though, when you look at the Waybright decision on page 205, isn't the court stating pretty clearly that the general rule is the state actor had to have intended harm, but under certain circumstances, if you can show conduct so arbitrary and egregious that you can satisfy the standard? Because I'm looking at the second column of print on page 205, and they're saying the presumption can be overcome by showing governmental conduct so arbitrary and egregious that shocks the conscious, usually because the state actor intended harm without justification. So, isn't Waybright setting out a very narrow exception to the requirement there be an intent to harm? And could you tell us how you fit within that narrow exception? Yes, Your Honor, I think that's correct. And I think there is, however, an exception. And if you look at Waybright, it's an order that was affirming summary judgment after the facts had come in and the plaintiff was unable to actually achieve that level of proof. And in reality, Your Honor, I mean, Waybright is a pretty good example because I'll be honest, it's not even really negligence. So, to suggest that having a trainee do physical therapy and run to become in shape to be a firefighter is somehow conscious shocking, it simply isn't. And if you read the facts that were developed in discovery that led to the summary judgment argument in this case, it's very clear that these plaintiffs and Waybright failed to achieve that middle spectrum. So, they obviously didn't have the intent to harm. Nobody made that allegation. And so, I understand you're trying to distinguish the facts, but both Waybright and Slaughter, the later decision that says expressly it turns on whether there was intent to harm the new recruits. I mean, I guess I'm having a hard time. I guess maybe let me ask it a different way. Do you agree that if intent to harm is required, that you failed to allege that? Your Honor, I have no way to know that prior to discovery to be able to allege that. And I was not going to put something into a complaint that I did not have at least some grounding to, you know, satisfy Rule 11. I disagree respectfully, Your Honor, that the requirement is that you must prove intent to harm. Again, I think Waybright doesn't say that. And I think if you read the in Slaughter, it details in pretty stark terms what the spectrum looks like. And again, in Slaughter, I mean, I think the facts, Your Honor, they simply aren't shocking. They had a situation where firefighters were training how to fight fires in a burning building. How else could you possibly do that? And so it didn't sort of get off the ground in the spectrum, if you will, Your Honor. So let's shift gears maybe to the argument about either, you know, depends on how you categorize it, the type of conduct needing to be either affirmative acts is the way the district court said. You know, there are a lot of cases on this issue. And sometimes you can kind of use cast things in certain ways. But isn't our precedent pretty clear that whether or not, you know, you can call it affirmative or not, that the cases show that when you're not the direct actor causing the death and that you don't satisfy that requirement in state created danger? So, Your Honor, I appreciate that question because I think it's really the nuts and bolts of the issue here is so many of these state created danger claims are officers who catch, for lack of a better term, from the Pender case, a lion, a bad actor, dangerous criminal, and then they release that lion back out to the wild. And that line goes around that that bad acting person goes around and harms the victim, the eventual plaintiff or their family. And in those cases, as Pender said, you're not responsible as a law enforcement officer for a lion at large. This is a different situation, Your Honor. And before I get to this particular line in this case and why it's different, let me also say that there are several attempted state created danger cases in the Fourth Circuit's jurisprudence where an employee is essentially trying to make a premises liability or I've got toxic mold at a school problem, and that's a state created danger because the school is run by the state. And that's more of a premises liability, sort of, again, doesn't get off the ground. It probably might not even be negligence, but it's certainly not in the gross negligence or recklessness or intent to harm level. What we have... Yes, ma'am. Mr. Boyle, getting back to slaughter. Slaughter pretty clearly says, I think, on page 322, relying on the Supreme Court case of Collins, that deliberate indifference is not enough. Okay. Even though the alleged facts may have shown deliberate indifference in the context of a voluntary employment relationship, such conduct was not arbitrary or conscience-shocking in a constitutional sense for purposes of due process. How do you have in your allegations, allegations beyond deliberate indifference? Your Honor, again, I would ask that you look at the occurrence in slaughter where I think there's a much broader, and I understand it's not binding, but it's a much broader discussion of the Lewis case and the Collins case. And I hesitate to say this, but I think perhaps the slaughter majority simply focused on intent to harm and was not actually correct. I think perhaps the facts in slaughter would not have given rise to a deliberate indifference claim anyway. And deliberate indifference, shocking the conscience, I think there is an element of shocking the conscience that you have to rise to. And again, if you have firefighters who are practicing firefighting in a burning building, I don't know how else you would possibly do that. The difference, if I can turn back, if I can answer your question, ma'am, if I could turn back please to the lines in this case. The allegations are that the defendants who are the direct supervisors from the assistant unit manager, unit manager, captain, assistant warden, warden, regional director, that chain of command, someone in there had these tapes. They knew what this particular line was saying and how dangerous he was. And if they didn't, that's quite possibly conscious shocking too. And we don't know the actual facts. We haven't done the discovery, but at least one of them did or should have, and perhaps many more than just one. And they were the ones, this wasn't a line out at large walking around that had been released. This was a line in their cage and they told Sergeant Callahan, go into this cage with that line. So they forced her without any support. Your honor, I'm out of time. Unless you have further questions, I'll stop for now. Thank you. Ms. Henderson. Thank you. Good afternoon. May I please report, my name is Tameka Henderson. I'm an attorney from the North Carolina Department of Justice and I represent Annie Harvey, David Mills, Demetrius Clark, Jonathan Slane, Anthony Spruill, and Ory Slade, all current or former employees of the North Carolina Department of Public Safety. The district court correctly granted defendants motion to dismiss for three reasons. First, this circuit has never recognized a substantive due process claim in the context of government employment and at a minimum, as the district court found, plaintiffs would need to allege the intent to harm. Second, courts are extremely reluctant to expand the state created danger doctrine in the context of public employment. But even under that doctrine, plaintiffs failed to properly allege any intentional affirmative acts by these individual defendants to establish a due process violation under a theory of state created danger. Third, under these circumstances, these officials do not have reasonably known that their inaction would violate a constitutional right where the finding of such a violation has never been recognized in the circuit. Therefore, these individual defendants are entitled to qualified immunity. This case decision in slaughter versus Baltimore is dispositive. In slaughter, a fire recruit died during a live burning training exercise. The recruits estate sued, arguing that the fire department violated the recruit's substantive due process rights by staging the training exercise with deliberate indifference to the recruit's safety so as to shock the conscience. In that case, the district court granted the fire department's motion to dismiss, holding that the deliberate indifference standard normally applies to those in the government's custody and not in the context of voluntary public employment. Instead, the district court applied a standard requiring a joint of intent to harm and found that however reckless the fire department's actions may have been, those actions did not rise to the level of a constitutional violation. This court affirmed applying the Supreme Court's decision in Collins v. City of Parker Heights and its own decision in Waybright versus Frederick County. This court concluded that because the complaint did not allege that the fire department staged the live burning training exercise with the purpose of causing harm to any of the recruits, it fell short of alleging a substantive due process violation. This court's holding in slaughter is instructive for several reasons. First, it made clear that the deliberate indifference standard does not apply to persons in government employment. Second, it reaffirmed that in this circuit, in the context of voluntary employment, a plaintiff could not maintain a claim for a without alleging intent to harm. Finally, it recognized the Supreme Court's call to exercise judicial restraint in cases like this that invite an expansion of substantive due process. Okay, Ms. Henderson. Yes. I understand that you're proposing a pretty neat and clean distinction here, but you know I tried to think about how the court would write it to case and I'm a little troubled by the question how do we draw the line between an omission and an affirmative act. Let me give you an example. If you, let's just say that you have a 1,000 prisoner unit and there have been disruptions in the unit for five days in a row. Fights, criminal conduct, cuttings, malicious woundings, and yet the supervisor assigns only one guard to the 1,000 person unit. Well, would you be taking the position today that that's not an affirmative act at any, at most it's just negligence? So again, how do we draw the line in terms of articulating the law between an omission and an affirmative act? Keeping that example. I think, first of all, the Supreme Court has not set out guideposts for what affirmative acts are other than saying that the what constitutes an affirmative act is a high bar and it has to be directly related to whatever the constitutional violation is. It can't be attenuated. In my example though, would this qualify as an affirmative act? If you've had five days of mini riots and yet you only put one person in to guard the 1,000 inmate unit, would that be an affirmative act because of the past history in the factual context? Your Honor, I would say under not only the Supreme Court's precedent, but this court's precedent, it would not be an affirmative act. The Supreme Court was clear in Collins v. City of Parker Pike that a government employer is not required to provide a safe working environment under subsidized food process, although state law may require that. And that's what we have here, Your Honor. They have not alleged. So just to make sure, I'm just, I'm following up on Judge Keenan's point. You'd agree that'd be like reckless and pretty terrible decision making, but your point, I take it, is that there's no affirmative act there that's creating the danger, right? It's just merely a failure to protect that one officer. Yes, Your Honor. And I would argue that both Judge Keenan's example and in this case is a Supreme Court has cautioned about constitutionalizing government policy decisions because then everything becomes a constitutional violation. Routine assignments become and it diminishes the due process clause. And I believe in Collins, what the court said is there's a presumption that the administration of government programs is based on rational decision making that takes into account competing social, political, and economic forces. So counsel, can you think of an example in the prison context where there would be an affirmative act that creates the state danger? Can you just give me like an example that you think would fall on the other side of the line? I mean, I think what we're trying to get at is we're trying to some things that are on the other side of the line would be helpful. What would be something that would be a state-created danger in your conception of the rule? So, Your Honor, the state-created doctrine, the danger doctrine under this court's current precedent and the Supreme Court precedent does not apply in the public employment context. But to answer your question, I can. In terms of affirmative act, it would have to be intentional, so egregious that it shocked the conscience. There cannot be, in this case, and there's not in the complaint, any allegations that these public servants intended for inmate missing to murder Sergeant Callahan. So the example you would give, counsel, is if the state paid an inmate to kill an officer, that that might violate the state-created danger doctrine. Yes, because that would be intentional and that would be an affirmative act and most certainly shock the conscience. I'm sorry, Judge. Go ahead. No, no. I appreciate the intent issue. I'm just trying to understand analytically how these two concepts relate. The issue of an affirmative act that creates the danger and intent. It may be your answer to Judge Richardson's question that, you know, the intent to harm is required. I think that, you know, there's a good argument that that's required for employees. But isn't that a separate issue than whether the state created the danger or is that a way you are explaining that the dangers would be created by the state? I think I understand your question, Your Honor. I would first say that it's defendant's position that it's unnecessary for the court to reach the issue of whether or not the complaint sufficiently alleged affirmative acts. If this court decides under Collins v. City of Parker Heights and it's precedent in slaughter and waive rights, that intent to harm is required in the employment context. You don't even know the issue. Okay. But assume, and I understand that position, but assume we disagree with you, just hypothetically, so we understand where we all stand. Assume we disagree with you on that issue and let's just focus on the affirmative act and the omission. You know, that's because you answered Judge Richardson's question by referring to the intent issue. Do you have one? I mean, he gave the example of, you know, the prison paid an inmate. I mean, you know, maybe that's one. Is that what you're talking about? The state has to, the prison has to actually be creating the danger? Maybe I'm not being clear. This circuit has never recognized a state-created danger doctrine in the context of public employment. I understand that, but I don't think we've said you can't have it. We've just said the Well, here, what you have in the complaint, and if I could just direct the court to the complaint, you have allegations essentially that amount to a failure to provide a safe working environment because of policy decisions that were made. You have, he has alleged that there were an inadequate number of trained or experienced correction officers, that they should have known about the inmate. Those, that has already been foreclosed by the Supreme Court in college because the Substantive Due Process Clause does not require the government employer to provide minimum safety standards, as harsh as that may sound. Although state law may be, and the plaintiff has asserted a claim in state court that's proceeding through the North Carolina state, but what you have here, you have no affirmative edge. You have basic policy decisions, and you don't know who made them. Routine matters, like assigning employees to But it seems to me, counsel, that a policy, it may be a policy decision, and I get the law that, you know, talks about the caution of, you know, using kind of tort, making torts concepts in the substantive due process. So I get all that, but making policy decisions, it seems to me, could be, at least in terms of the narrow issue we're talking about, an affirmative act. I mean, saying what's an affirmative act and what's an omission seems to me, you can almost pick any issue and phrase it one way or the other. And I wonder if, you know, we understand affirmative acts a little bit more by looking at our cases, which seem to require more direct causation. You know, the primary actor that leads to the harm, or the most immediate actor that leads to the harm, it seems like that is the way we have interpreted affirmative acts that kind of keeps us from having to, you know, or avoids the possibility you just kind of recast that an action is an omission or affirmative act. I think that's exactly right, Your Honor. The court has said the concept of affirmative acts should not extend beyond the context of immediate interactions between the state actor and the plaintiff. And here, the only affirmative actor was inmate Lindsey. And again, I'll just state that what constitutes an affirmative act is a very high bar that has not been met in this case, as the district court correctly found. As I was saying, Your Honor, it's unnecessary for the court to reach the issue of whether the complaint sufficiently alleged affirmative act if this court determined in the context of public employment allegations of intent to harm are necessary to state a substantive due process. Under the State Created Danger Doctrine, the plaintiff is required to allege affirmative acts by these individual defendants. As this court acknowledged in slaughter, in circumstances like this, only allegations of a purpose to cause harm unrelated to a legitimate objective will satisfy the element of arbitrary considered shocking to the conscience. In Turner v. Thomas, this court said the State Created Danger Doctrine is narrowly drawn and the bar of what constitutes an affirmative act is very high. Here, the complaint does not include any allegations that these specific defendants did anything other than work for the Department of Public Safety in high-ranking positions. Therefore, the district court correctly found that plaintiff failed to satisfactorily plead a due process violation under the State Created Danger Doctrine. I do want to talk about qualified immunity for a minute if I can. Defendants contend that plaintiff has failed to adequately state a constitutional violation, but even if he had, this court has never recognized a substantive due process violation in the context of public employment. Moreover, the Supreme Court has never held that a prison employee whose essential duties involve monitoring inmates can assert a substantive due process claim when assaulted or even mortally wounded by an inmate they were tasked with supervising. Plaintiff then is unable to show that any constitutional right was clearly established under the circumstances of this case. The defendants here are therefore entitled to qualified immunity. Because this circuit has never recognized a substantive due process claim in the context of public employment, this court should heed the Supreme Court's call to exercise caution when contemplating an expansion of substantive due process. Even if this court were to recognize that under certain circumstances a substantive due process claim could proceed in the employment context, this court should find that allegations of intent to harm are necessary, especially where here a third party committed a murder and the only specific allegations against defendants is that they worked in management for the government employer. Moreover, as previously argued, these defendants are entitled to qualified immunity. For these reasons, Annie Harvey, David Mills, Demetrius Clark, Jonathan Swain, Anthony Spruill, and Ori Slate respectfully request this court affirm the district's court order of dismissal. Thank you, counsel. Mr. Boyle, you have some response time. Thank you, your honor. First, someone told Sergeant Callahan to go work on TAN Unit 2 that day. It was one of these defendants. Someone told the other untrained, unqualified prison guards to go work there that day, too. Those are affirmative acts. There's no question. If these defendants did not know about inmate Wissink's recordings... But did they did the affirmative... I mean, the point is not just generally that there must be an affirmative act, right? It must be an affirmative act that creates the danger, right? And so help me understand. I take Judge Quattlebaum's point to be that we could describe things as affirmative or omissions by uses of language. But the point is it has to be tied directly to the creation of the danger. And here the danger is the inmate, not the sort of failure to protect by sending these particular guards in. Well, it is, your honor, because when you specifically, as the government, have a lion by the tail and you send your employee in there... I don't think the sort of language that you're suggesting is helping your case in it. But I don't think there was a lion here and I don't think that he had a tail. So you might stick to talking about the actual facts that we're describing. When you have a dangerous murder, who's a convicted murder inmate, who's been making phone calls and describing how he's going to kill people, and you take no action and you understaff a prison unit, it's entirely foreseeable and predictable. And that's what caused this. And those are affirmative action. That's what we expect to be able to prove once we conduct discovery. And I would also say, your honor, when it comes to the conscious shot... Counsel, you just used foreseeability in your answer right there. And that may be, and in tort law, that's a valid concept. But I think that's the problem. It's not a question of simply is it affirmative and simply is it foreseeable and might it even be in tort law approximate calls. It seems to me clearly in our cases require it to be effectively the direct calls, the most direct calls. And I just don't see... I mean, it helped me under... If that's maybe I'm misunderstanding the law or misreading it. So if that's... I appreciate you clarifying that. But if I'm right, how can what you allege that acts that the state took be the most direct calls? And I think, your honor, I don't recall seeing anything that says it has to be only in most direct calls. I think it's more of approximate calls, a cause type situation. But I believe if discovery transpires and is conducted, what we are going to find is that this particular unit was understaffed day after day after week after month. And so it becomes more conscious shocking as the facts are developed. And again, this is like the Robinson case, your honor, from 2013. It's an unpublished case where the fourth circuit allowed a case to go forward beyond the pleadings phase and to go into discovery. And then eventually the plaintiff was not able to connect conscious shocking facts to the evidence. And that case was dismissed on summary judgment and affirmed by the fourth circuit. So again, we're just asking for the opportunity to be able to develop these facts. And I cannot sit here and tell you, your honor, that I know for certain because I don't know the facts. And I suspect from what I have gleaned in general that there will be facts that support this. And if there are not, there's no harm whatsoever for the defendants. They're going to be able to win at summary judgment. And that's that. Again, when you talk about the Collins case and the slaughter case, those were more like premises liability. And I just want to get back to that, your honor. It was not an individual or a harmful or dangerous person that was the focus on those. And to be fair, I think Waybright acknowledged that there's a spectrum and you do not have to have intent to harm to make this type of allegation and proceed into discovery. So to the extent that slaughter says something different than I guess slaughter may be overruled Waybright. But if it needs to happen, we would ask that you overrule slaughter in that regard. I see that I'm out of time unless the court has any further questions. Thank you, counsel. As you know, we would normally come down and shake your hand. We certainly appreciate your argument and briefing in these cases.
judges: Julius N. Richardson, A. Marvin Quattlebaum Jr., Barbara Milano Keenan